```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

AUTO-OWNERS INSURANCE COMPANY       *

       Plaintiff,                  *

vs.                                 *
                                CASE NO. 3:05-CV-109 (CDL)
GREGORY ROBINSON, MONA ROBINSON    *
SALLY CRYMES, JOHN CRYMES, and
PINE TOPS, LLC,                     *

       Defendants.                 *

## O R D E R

Presently pending before the Court is Auto-Owners Insurance Company's ("Auto-Owners") Motion for Summary Judgment (Doc. 27). Auto-Owners asks this Court to determine whether it has a duty to defend John Crymes, Sally Crymes, and their company Pine Tops, LLC, in a race discrimination case filed by Gregory and Mona Robinson. *See Robinson v. Crymes*, No. 3:05-CV-49 (hereinafter "underlying lawsuit"). The Robinsons claim in the underlying lawsuit that, because they are a mixed-race couple, the Crymes prevented them from buying property in the River Shoals Subdivision in Athens, Georgia. Auto-Owners claims that under its insurance policy with Pine Tops (the "Policy"), it has no duty to defend Pine Tops or the Crymes ("Crymes Defendants") in the underlying lawsuit.

### BACKGROUND

The Robinsons are a bi-racial couple who wanted to build a house in Athens, Georgia. In 2003, Mrs. Robinson began looking for a lot. Mrs. Robinson found property in the River Shoals development that she

believed would fit the needs of her family. The Robinsons then began discussing with the Crymes, the owners of the River Shoals development, a potential purchase of the lot. The Robinsons also found a builder and began the process of having house plans drawn.

In late 2003, the Robinsons went to an open house at River Shoals. This was the first time that the Crymes met Dr. Robinson, an African-American. The Robinsons claim that once the Crymes discovered that the Robinsons are a mixed-race couple, the Crymes refused to sell them a lot of land in River Shoals. The Crymes stopped answering calls from Mrs. Robinson and allegedly told Mrs. Robinson that the lot she wanted to purchase was no longer for sale because of zoning problems. In June 2005, the Robinsons filed the underlying action claiming that Pine Tops and its agents Sally and John Crymes violated the Fair Housing Act, 42 U.S.C. § 3601, et seq., §§ 1981 and 1982 of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, the Georgia Fair Housing Law, O.C.G.A. § 8-3-200, et seq., and Georgia common law.

On December 1, 2005, Auto-Owners filed this declaratory judgment action to determine whether it has a duty to defend Pine Tops and the Crymes under Pine Tops' commercial general liability policy (the "Policy"). Plaintiff contends that no genuine issues of material fact exist to be tried, and that no coverage exists under the unambiguous language of the policy.

DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324.

**B.  Insurance Contract Construction**

Since this case is before the Court based on diversity jurisdiction, the law of Georgia governs the interpretation of the Policy. *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1214 (11th Cir. 1999).  In Georgia, "the duty to defend is determined by the contract." *Penn-America Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565, 490 S.E.2d 374, 376 (1997) (internal quotation marks and citation omitted).  If the claim "potentially comes within the policy," there is a duty to defend. *Id.*  In order to determine if the claim falls within the policy, the court looks "to the allegations in the complaint in the underlying lawsuit and to the terms of the insurance polic[y]." *SCI*, 181 F.3d at 1214.

3

The terms of the insurance contract are interpreted using the "ordinary rules of contract construction." *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 337 (11th Cir. 1996); *Park 'N Go of Ga., Inc. v. United States Fidelity & Guar. Co.*, 266 Ga. 787, 791, 471 S.E.2d 500, 503 (1996).  If the language of the insurance contract is "clear and unambiguous," then no interpretation is necessary, and the contract is enforced as written. *Simpson v. Infinity Select Ins. Co.*, 269 Ga. App. 679, 681, 605 S.E.2d 39, 41-42 (2004) (citation omitted).  This is a question of law for the court. O.C.G.A. § 13-2-1.  If the language of the contract is ambiguous, such that more than one meaning could be assigned to the provision in question, then the court uses the rules of contract interpretation to give the terms their ordinary meaning.  O.C.G.A. § 13-2-2; *Bituminous Cas.*, 73 F.3d at 337; *W. Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 676, 601 S.E.2d 363, 366 (2004).  If after applying the rules of contract interpretation the contract is still ambiguous, the case must be submitted to a jury for a factual determination as to what the parties intended and what the language of the contract means. *Simpson*, 269 Ga. App. at 681, 605 S.E.2d at 42.

**C.  The Auto-Owners Policy**

The Crymes Defendants claim that Auto-Owners has a duty to defend under two provisions of the Policy.  First, the Crymes Defendants claim that Auto-Owners has a duty to defend under the "bodily injury" section.  Second, the Crymes Defendants argue that a

4

duty to defend arises under the "personal injury" provisions of the Policy. For the following reasons, the Court rejects the Crymes Defendants' arguments and finds that Auto-Owners has no duty to defend.

   *1. Bodily Injury*

The Policy requires that Auto-Owners "defend any 'suit' seeking [damages because of 'bodily injury' or 'property damage' to which this insurance applies]." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at one time." It is clear in Georgia that "bodily injury" as used in insurance contracts refers to "physical injury to the body." *O'Dell v. St. Paul Fire & Marine Ins. Co.*, 223 Ga. App. 578, 579, 478 S.E.2d 418, 420 (1996) (internal quotation marks and citation omitted). Bodily injury "does not include non-physical, emotional or mental harm." *Id.* Therefore, for the complaint to allege "bodily injury," the complaint must allege that there has been some kind of physical injury to the plaintiffs.

Here, the Complaint in the underlying lawsuit does not allege that Dr. or Mrs. Robinson suffered from any bodily injury. The Robinsons do not contend that they were physically harmed by the Crymes Defendants. The Complaint does claim that Mrs. Robinson felt "frustrated and upset" (Compl. ¶ 32) and that both Robinsons suffered "humiliation, embarrassment, [and] emotional distress." (Compl. ¶ 46.) Nowhere in the underlying Complaint, however, do the

Robinsons allege that any of this emotional distress was the result of some physical injury.  *See O'Dell*, 223 Ga. App. at 579-80, 478 S.E.2d at 420.  To the contrary, the Robinsons allege that they are seeking damages "for discrimination on the basis of race and color." (Compl. ¶ 1.)

The Crymes Defendants claim that the bodily injury provision covers "injury, sickness or disease where there are physical consequences or manifestations of injury."  (Crymes Defs.' Opp'n to Pl.'s Mot. for Summ. J. 14 (emphasis omitted).)  To accept this interpretation of the policy would require the Court to rewrite the policy.  The "bodily injury" provision does not mention or discuss possible "physical consequences or manifestations" of an injury.  The Crymes Defendants offer no explanation that would justify the expansion of this policy provision to include physical manifestations of emotional distress; they do not argue that the provision is ambiguous and that their interpretation of the provision should prevail as against the insurer.  Furthermore, even assuming that this provision is ambiguous in that the words "bodily injury" are used to define themselves, Georgia courts have clearly defined "bodily injury" as "physical injury to the body."  *O'Dell*, 223 Ga. App. at 580, 478 S.E.2d at 420.  Since the Robinsons have not alleged any physical injury to their persons, coverage does not exist under the "bodily injury" provision of the policy.

Even accepting that, as the Crymes Defendants assert, the Robinsons have suffered from a bodily injury, that injury would have to be "caused by an 'occurrence' that takes place in the 'coverage territory.'" An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Although "accident" is not defined in the Policy, Georgia courts have determined that "accident" is "defined as an event which takes place without one's foresight or expectation or design." *O'Dell v. St. Paul Fire & Marine Ins. Co.,* 223 Ga. App. at 580. An accident cannot be intentional. In this case, any injuries the Robinsons could have suffered would have to result from the alleged racial discrimination, which is, by its nature, intentional.[1] *See SCI*, 181 F.3d at 1216-17; *O'Dell*, 223 Ga. App. at 580, 478 S.E.2d at 420. Therefore, even if the Robinsons sufficiently alleged a "bodily injury" under the policy, such injury does not arise from an "accident" and thus no coverage would exist.

---

[1] The Crymes Defendants contend that count five of the Complaint, which alleges that the Crymes Defendants "negligently hired, supervised, and/or retained agents who discriminated against [the Robinsons]," (Compl. ¶ 58), falls under the definition of "occurrence." The Court disagrees. First, the Robinsons have not alleged that the Crymes Defendants' negligent hiring resulted in any type of physical injury. Therefore, this count would not give rise to a duty to defend under the bodily injury provision. Second, the Georgia Court of Appeals in *O'Dell* specifically discussed a claim for negligent retention and did not find that mere use of the word "negligent" in a complaint causes that claim to fall under the definition of "occurrence." 223 Ga. App. at 580, 478 S.E.2d at 420. Additionally, the Court notes that the Policy does not state that it covers claims for negligent hiring, supervision, or retention.

*2. Personal Injury*

Defendants also contend that coverage exists under the "personal injury" provision of the Policy.  Under that provision, Auto-Owners has the "duty to defend any 'suit' seeking [damages because of 'personal injury' or 'advertising injury' to which this coverage part applies]."  "Personal injury" is further defined as injury "other than 'bodily injury', arising out of . . . [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor."  The Crymes Defendants argue that this provision is ambiguous, must be construed in favor of coverage, and consequently must be interpreted to provide coverage for interference with their *prospective* occupancy.  Plaintiff maintains that the policy is unambiguous and only applies to interference with one's present occupancy.  Since the Robinsons did not occupy the premises at the time of the alleged conduct, Plaintiff contends no coverage exists under the personal injury provisions of the policy.

It is true that in Georgia "[ambiguities in insurance contracts are construed against the insurer."  When, however, the contract language is "clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible [by the trial court]."  *Estate of Sam Farkas, Inc. v. Clark*, 238 Ga. App.

115, 119-20, 517 S.E.2d 826, 820 (1999) (internal quotation marks and citation omitted) (alteration in original).  The Court, therefore, must first determine if the Policy provision is ambiguous—subject to more than one reasonable interpretation.  *Eckerd Corp. v. Alterman Props., Ltd.*, 264 Ga. App. 72, 77, 589 S.E.2d 660, 665 (2003) (citations omitted).

The Court finds the language unambiguous.  It plainly states that coverage exists for the invasion of the insured's right of private occupancy of a "room, dwelling or premises that a person *occupies* . . . ."  [Emphasis added].  "Occupies" denotes present, not future, tense.  Reading the entire phrase yields but one reasonable interpretation—that coverage exists when someone alleges interference with *present* occupancy not *future* occupancy.  Although no Georgia court has decided this specific issue, other courts have reached conclusions similar to the one reached by this Court.  *See United States v. Sec. Mgmt. Co.*, 96 F.3d 260, 265 ("We believe that a reasonable insured would read the language as excluding cases where the aggrieved individual was not possessed of an existing right of private occupancy.") (7th Cir. 1996); *Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co.*, 593 S.E.2d 103, 107-08 (N.C. App. 2004) ("[T]he proper inquiry is not whether a party has physically assumed control of the property, but whether he has obtained a legally enforceable *right* to do so."); *Powell v. Alemaz, Inc.*, 760 A.2d 1141, 1147 (N.J.

9

Super. 2000) (holding that the same language as used in Auto-Owners' policy does not provide coverage for claims by prospective tenants).

Based on the foregoing, the Court finds that since the Robinsons did not allege interference with *present* occupancy because they did not yet occupy the premises in question, coverage does not exist under the "personal injury" provision of the policy.

## CONCLUSION

No duty to defend arises under either the bodily injury or personal injury provisions of the Policy.  Therefore, Auto-Owners' Motion for Summary Judgment (Doc. 27) is granted.

IT IS SO ORDERED, this 6th day of September, 2006.

          S/Clay D. Land
            CLAY D. LAND
    UNITED STATES DISTRICT JUDGE